HOLST *vs.* BURRUS *et al.*

1. When, on a rule to distribute money, the court, acting as judge and jury, renders a decision fixing the order of payment but gives no reason, and the record discloses no ruling on any specific question of law or fact, the assignment of error need not be more specific than the judgment. It is sufficient to allege in the bill of exceptions that the court erred in awarding the money to each of the prevailing creditors, and in not awarding it to the excepting creditor.

2. This being a contest between a mortgagee on the one side, and creditors by general judgments junior to the mortgage on the other, it is not apparent that the court erred in giving preference to the latter, the evidence showing the following facts adverse to the mortgage : It was executed pending suit in favor of one of the judgment creditors ; it embraced all the property of the debtor corporation ; it was executed for $1,100, and the mortgagee advanced only $100 of the money, and $200 had been paid to him prior to the foreclosure ; there is some slight doubt as to whether the corporation duly authorized any mortgage to be executed ; if the authority was in fact given, it was to secure a loan of about one thousand dollars, to be procured by the president, and it was not expressly provided that the officers of the corporation might be interested in the loan ; the loan was made by eleven stockholders, one of whom was the mortgagee, another the secretary, and another the president ; the president and secretary executed the mortgage, and both were interested in it as beneficiaries ; the president, before or at the time of executing it, engaged to act as the agent of the mortgagee ; he did act as such agent even in foreclosing the mortgage ; he had, prior to executing the mortgage, disclaimed being the president ; the interest agreed to be paid was eight per cent. per annum, and this per cent. commenced to run more than a year anterior to the date of the mortgage ; the mortgage recites a note for $1,100.00 made by the corporation to the mortgagee, but no note was produced in evidence, nor was any note mentioned by any of the witnesses who explained the transaction ; the mortgage was executed with so little attention to accuracy that the corporate name· was misstated in the instrument ; it is manifest that the mortgage *fi. fa.* is proceeding, not for the benefit of the mortgagee, but for that of persons not named in the mortgage, two of whom are the officers who represented the corporation in the act of execution, and thus were on both sides of the lien ; there is no evidence in the record that the mortgage was ever recorded.

May 1, 1887.

Money Rule. Practice in Supreme Court. Mortgages. Judgments. Debtor and Creditor. Corporations. Before Judge INGRAM. City Court of Columbus. October Term, 1886.

Reported in the decision.

PEABODY, BRANNON & BATTLE; HARRISON & PEEPLES, for plaintiff in error.

J. L. WILLIS; J. F. POU; GOETCHIUS & CHAPPELL, for defendants.

BLECKLEY, Chief Justice.

The property of a corporation by the name of the Columbus Driving and Base-Ball Association was sold, under a general judgment against the corporation. The sheriff, having the money in hand, was ruled to pay it over. To that rule parties were made, one of whom was Holst, who claimed as a mortgagee. Another was a second general judgment creditor. The mortgage bore date in December, 1885, and the judgments were rendered, one of them in April, and the other in July, 1886. The mortgage was foreclosed in July, 1886. The mortgagee filed a regular petition, claiming the money, in which he set forth that in the execution of the mortgage, the corporation was misdescribed, the name used being the " Columbus Base-Ball and Driving Association," instead of the Columbus Driving and Base-Ball Association. The difference was simply a transposition of words in setting out the name of the corporation.

Evidence was heard with reference to the origin of the mortgage. It tended to show that the association, being insolvent, needed money to pay its debts, and at a certain meeting passed a resolution authorizing the president to borrow about $1,000, and to execute a mortgage to secure the same. There was no intimation in that resolution that

the officers of the corporation were to be interested in the loan. The resolution was not, at the time of its passage, entered upon any corporate book; shortly afterwards it was entered on the minutes by the secretary, from a memorandum made at the time; but no signing up of the minutes ever took place. Neither the president nor the secretary ever signed. There was some other evidence tending to show that there might not have been any regular action of the corporate body in the passing of that resolution. One of the judgment creditors testified that he was present at the meeting, and heard no such resolution offered or adopted. But be that as it may, the officers procured a loan in this way; eleven members of the corporation contributed $100 each, making $1,100. This was shortly after the passage of the resolution, which was in November, 1884. It was understood that the mortgage was to be executed, but none was ever executed until December, 1885. Then, to save expense, a mortgage covering all the corporate property was made for the whole sum, to Holst, one of these lenders; and at the time it was made, or before, the president of the association agreed with him that he, the president, would look after the mortgage and take care of it, it being understood that Holst was too much occupied with his business to attend to it.

The mortgage recites a note as being executed on the date of the mortgage, for $1,100.00, by the association to Holst; and says that the note bears interest at the rate of eight per cent. per annum, from a named day in November, 1884, more than a year previous to the execution of the mortgage. One of the members who advanced the $100 each, was president of the association; another was secretary of the association; and these two officers executed the mortgage.

After these general judgments were obtained, and indeed I believe after the seizure of the property under one of them, the mortgage was foreclosed under an affidavit made by the president. It seems that he in good faith ex-

v 79 8

ecuted the agency which he undertook to execute for the mortgagee, and even carried it so far as to foreclose the mortgage against the association, in so doing acting as agent for the mortgagee. There is no evidence in the record that the mortgage was ever recorded. It is averred in the petition of the mortgagee claiming the money that it was recorded, but there is no evidence to that effect. The court ordered the money paid, first to the elder of the two general judgments; and secondly, as to the balance, to the younger general judgment. The fund was thus exhausted, leaving nothing to apply on the mortgage.

In thus deciding, the court performed the part of both judge and jury, under an agreement that the judge should decide the facts as well as the law. The record nowhere discloses that any specific legal question was ruled by the judge, or that any decision of fact was made except that announced in the general judgment disposing of the fund.

1. On the call of the case here, a motion was made to dismiss the writ of error because the errors complained of were not sufficiently assigned, the assignment being simply that the court erred in ordering payment to one of the general judgments; then that it erred in ordering payment to the other; and then that it erred in not ordering payment to the mortgage. The assignment of error is as specific as the nature of the case admits of. It is as definite and particular as any ruling that appears to have been made by the court, and we see not how it could have been more specific without going into argument. *Barksdale vs. Brown*, 16 *Ga.* 95 ; *Frierson vs. Alexander*, 74 *Ga.* 666. The motion to dismiss the writ of error is therefore overruled.

When, on a rule to distribute money, the court, acting as judge and jury, renders a decision fixing the order of payment but gives no reason, and the record discloses no ruling on any specific question of law or fact, the assignment of error need not be more specific than the judgment. It is sufficient to allege in the bill of exceptions

that the court erred in awarding the money to each of the prevailing creditors, and in not awarding it to the excepting creditor. Sound practice requires a fair degree of distinctness in assigning errors, but overstrictness is no less pernicious than too much laxity. It is our duty to shun extremes. We do not consider *The Mayor of Brunswick vs. Moore*, 74 *Ga.* 409, or *Hall vs. Huff*, *Id.* as inimical to the present ruling. At all events, their letter is not applicable to the exact formula now before us, and their spirit is not to be extended by analogy.

2. Passing to the merits of the case, there is an additional fact to be stated, and that is, that before the mortgage was foreclosed, a payment had been made upon it, amounting to $200. So that the payment already made at the time of the foreclosure, exceeded the amount which the mortgagee himself had advanced; and there is no indication in the mortgage that any other person was interested as a creditor in the debt to be secured. That comes out in the parol evidence. There was no note put in evidence. That any was executed does not appear, otherwise than by recitals in the mortgage. Whether there was a note or not, the mortgagee, in so far as he was a creditor himself, was paid off before the foreclosure. The failure to show that the mortgage was recorded before the judgments were rendered was, of itself, fatal to the mortgagee's claim of priority. Code, §1957. Certainly all the facts taken together, would put the judgments ahead of the mortgage. This being a contest between a mortgagee on one side, and creditors by general judgments junior to the mortgage on the other, it is not apparent that the court erred in giving preference to the latter, the evidence showing the following facts adverse to the mortgage: It was executed pending suit in favor of one of the judgment creditors; it embraced all the property of the debtor corporation; it was executed for $1,100, and the mortgagee advanced only $100 of the money, and $200 had been paid to him prior to the foreclosure; there

is some slight doubt as to whether the corporation duly authorized the mortgage to be executed; if the authority was in fact given, it was to secure a loan of about one thousand dollars, to be procured by the president, and it was not expressly provided that the officers of the corporation might be interested in the loan; the loan was made by eleven stockholders, one of whom was the mortgagee, another the secretary and another the president; the president and secretary executed the mortgage, and both were interested in it as beneficiaries; the president, before or at the time of executing it, engaged to act as the agent of the mortgagee; he did act as such agent even in foreclosing the mortgage; he had, prior to executing the mortgage, disclaimed being the president; the interest agreed to be paid was eight per cent. per annum, and this per cent. commenced to run more than a year anterior to the date of the mortgage; the mortgage recites a note for $1,100.00 made by the corporation to the mortgagee, but no note was produced in evidence, nor was any note mentioned by any of the witnesses who explained the transaction; the mortgage was executed with so little attention to accuracy that the corporate name was misstated in the instrument; it is manifest that the mortgage *fi. fa.* is proceeding, not for the benefit of the mortgagee, but for that of persons not named in the mortgage, two of whom are the officers who represented the corporation in the act of execution, and thus were on both sides of the lien; there is no evidence in the record that the mortgage was ever recorded.

Judgment affirmed.